IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-CR-20221-KING

UNITED STATES OF AMERICA,

v.

CHRISTOPHER RILEY,

Defendant.

_____/

### SENTENCING OPINION AND ORDER

THIS CAUSE comes before the Court upon Defendant's Sentencing Memorandum (DE #32), requesting that this Court impose a sentence below the Guideline range. The Government has filed a Response (DE #33), and a sentencing hearing was held on August 11, 2009 (DE #36), when both parties were heard and fully argued their respective positions. At the conclusion of the hearing the Court took the matter under advisement. After careful consideration of the arguments and legal authorities, the Court concludes that a below-Guidelines sentence is appropriate.

I.      **Factual and Procedural Background**

The defendant, Christopher Lawrence Riley, is a 24 year old male with a high school education. He is married and lived with his wife in Kentucky until his arrest for this offense. He has no children, but his wife has 2 children from a previous marriage. He currently lives with his parents in Kentucky, and worked as an inventory manager at Walmart until he was fired because of this offense.

1

On October 3, 2008, the defendant entered an online chat room and initiated an instant message conversation with another person in the chat room whom he believed to be a single mother with a 10 year old daughter. That person was actually an undercover FBI agent. During the conversation, the defendant expressed an interest in engaging in sexual activity with the agent and her daughter, and requested pictures of the daughter as part of a trade. The agent agreed, and the defendant sent to the agent four pornographic images, 3 of which depicted nude females under the age of 18, and 2 of which depicted children ages 5 or younger engaging in sexual activity with adult males. The defendant then requested to see pictures of the agent's daughter, and the agent sent to the defendant a picture of a female child between the ages of 8 and 10. After making contact with the defendant, FBI agents discovered an additional 900 images of child pornography on his computer and 10 videos depicting child pornography.[1]

The defendant subsequently plead guilty to one count of transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1). Section 2G2.2 provides a base offense level of 22 for this offense. The following adjustments apply: a 2 level increase because the material involved children under 12 years of age (2G2.2(b)(2)), a 5 level increase because the offense involved distribution for receipt of a thing of value (2G2.2(b)(3)(B)), a 4 level increase because the material portrayed depictions of violence (2G2.2(b)(4)), a 2 level increase because the offense involved the use of a computer (2G2.2(b)(6)), a 5 level increase because the offense involved more than 600 images (2G2.2(b)(7)(D)), a 2 level decrease for acceptance of responsibility (3E1.1(a)), and a 1 level decrease for assisting authorities in the investigation of his own misconduct (3E1.1(b)). Therefore, the total offense level is 37. The defendant has zero criminal history points and a criminal history category of I, which does not change the offense of

---

[1] Pursuant to the comments to the Sentencing Guidelines (§2G2.2, cmt n.4(B)(ii)), a video clip is considered the equivalent of 75 images; therefore, under the guidelines, the defendant was in possession of 1,654 images.

2

level of 37. Thus, the recommended Guidelines range for this offense is 210-260 months. However, there is a statutory maximum for this offense of 240 months; therefore, the final Guidelines range is 210-240 months. There is a congressionally mandated statutory minimum of 5 years, or 60 months.

## II.     The Defendant's Background

The defendant has lost his job due to his arrest in this case, and is currently unemployed and living with his parents. He is married and has 2 stepchildren, all of whom remain supportive of him. Several other friends and family members have written supportive letters on his behalf. The defendant has been attending psychiatric therapy sessions with Dr. Ed Connor, who has reported that the defendant has been cooperative and has benefitted from discussing his childhood traumas. Dr. Connor opines that the defendant is an excellent candidate for a community-based treatment program, that he does not pose a risk of acting out sexually with children, and that his risk of reoffending is low. The defendant was also examined by Dr. Eric A. Imhof, who conducted a Sex Offender Specific Psychological Evaluation. Dr. Imhof opines that, although the defendant qualifies for a diagnosis of a Paraphilia, he presents a low risk of reoffending and can be safely maintained in the community with supervision and outpatient mental health treatment.

## III.    Problems with the Recommended Guideline Range

Although advisory, the Sentencing Guidelines are typically afforded a measure of deference. Section 2G2.2 has, however, been the subject of recent judicial criticism which weighs against imposing a sentencing within the Guideline recommendation. Judge Lynn Adelman, in *United States v. Hanson*, 561 F. Supp. 2d 1004, 1010-11 (E.D. Wis. 2008), has appropriately summarized the flaws in this section of the Guidelines, which is reproduced here:

In a recent paper published on Professor Douglas Berman's sentencing website, an Assistant Federal Defender traced the history of this guideline and pointed out its serious flaws, which were clearly evident in this case. See Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines, available at http://sentencing.typepad.com (June 10, 2008). As Stabenow explains, much like the crack guideline criticized by the Supreme Court in *Kimbrough*, guideline 2G2.2 is not representative of the Commission's typical role or of empirical study. The guideline has been steadily increased despite evidence and recommendations by the Commission to the contrary. Congress has repeatedly amended it directly, ostensibly to target mass producers of child pornography and/or repeat abusers of children, a class of offenders that make up less than 5% of those affected by the changes. The most recent changes from 2003 apparently came from two lawyers in the Justice Department who persuaded a novice Congressman to add them to the popular Amber Alert bill. *Id*. at 27. To the extent that the advisory guidelines deserve continued respect from courts, that respect will be greatest where the Commission has satisfied its institutional role of relying on evidence and study to develop sound sentencing practices. This guideline simply does not represent that role, as the Commission itself has acknowledged.

Between 1994 and 2007, the mean sentence in child pornography cases increased from 36 months to 110 months. *Id*. at 1. As Stabenow notes, this increase was not the result of the empirical approach often used by the Commission, designed to be an expert body on sentencing. Rather, it was the result of arbitrary increases by Congress slipped into other bills, often with little or no debate, resulting in direct amendments to the guidelines. *Id*. at 2. These amendments destroyed some of the careful distinctions the Commission had drawn between true peddlers of child pornography and more simple possessors or transporters. To its credit, and as in the crack cocaine context, the Commission sought to persuade Congress not make such changes, but to no avail. *Id*. at 3-7 (quoting letter from Chair of the Commission). Specifically, the Commission has noted that the enhancement for use of a computer does not make much sense because online pornography comes from the same pool of images found in specialty magazines or adult bookstores. Further, to the extent that use of a computer may aggravate an offense, it does not do so in every case. For example, someone who e-mails images to another (like the instant defendant) is not as culpable as someone who sets up a website to distribute child pornography to a large number of subscribers. If the defendant did not use the computer to widely disseminate the images, use them to entice a child, or show them to a child, the purpose for the enhancement is not served. *Id*. at 14-15. Yet it applies in virtually all cases.

The Commission itself sought to increase penalties for those offenders who also had a history of sexually exploiting or abusing minors, and posed a greater risk of recidivism, certainly a valid concern. However, Stabenow notes that it did so based on a study of offenders in 1994 and 1995, while most offenders prosecuted in federal court today, such as defendant Hanson, have no such histories. The typical child pornography defendant today has no prior felonies of any kind, let alone prior abuse of children, and is not involved in production. *Id*. at 13.

Finally, in 2003, as part of the Feeney Amendment to the PROTECT Act, Congress added the 5 level enhancement for number of images. No research, study or

rationale was provided for this huge increase. At the same time, Congress established the 5 year mandatory minimum applicable in this case, as a result of which the Commission also increased the base offense level to 22 to keep pace. Again, this had nothing to do with the Commission's statutory mission of satisfying the purposes of sentencing. *Id.* at 18-19.

In his conclusion, which really hit home in this case, Stabenow noted that:

'The flaw with U.S.S.G. § 2G2.2 today is that the average defendant charts at the statutory maximum, regardless of Acceptance of Responsibility and Criminal History. As noted by the Guidelines Commission, there are "several specific offense characteristics which are expected to apply in almost every case (e.g. use of a computer, material involving children under 12 years of age, number of images)." See Amendment 664 to United States Sentencing Guidelines, (November 1, 2004). The internet provides the typical means of obtaining child pornography, resulting in a two-level enhancement. See U.S.S.G. § 2G2.2(b)(6). Furthermore, as a result of internet swapping, defendants readily obtain 600 images with minimal effort, resulting in a five-level increase. See U.S.S.G. § 2G2.2(b)(7)(D). . . . Undoubtedly, as the Commission recognized, some of these images will contain material involving a prepubescent minor and/or material involving depictions of violence (which may not include "violence" per se, but simply consist of the prepubescent minor engaged in a sex act), thereby requiring an additional six-level increase. See U.S.S.G. § 2G2.2(b)(2),(4). Finally, because defendants generally distribute pornography in order to receive pornography in return, most defendants receive a five-level enhancement for distribution of a thing of value. See U.S.S.G. § 2G2.2(b)(3)(B). Thus, an individual who swapped a single picture, and who was only engaged in viewing and receiving child pornography for a few hours, can quickly obtain an offense level of 40. Even after Acceptance of Responsibility, an individual with no prior criminal history can quickly reach a Guideline Range of 210-262 months, where the statutory maximum caps the sentence at 240 months. See U.S.S.G. § 5G1.1(a).

The results are illogical; Congress set the statutory range for first time distributors as five to twenty years. Congress could not have intended for the average first time offender with no prior criminal history to receive a sentence of 210 to 240 months. An individual with a Criminal History Category of II faces a Guideline range of 235 to 240 months, and any higher Criminal History score mandates the statutory maximum. These results run contrary not only to Congressional will, but also to a principal Guideline policy -- providing harsher penalties to individuals with more significant Criminal History scores while still retaining an incentive for pleas at all Criminal History levels.'

The Court agrees with Judge Adelman's analysis of the problems with section 2G2.2, and therefore concludes that substantial deference to the recommended Guideline range is not appropriate in this case.

5

## IV.   The Applicable Law

The Sentencing Guidelines are now, of course, advisory. *United States v. Booker*, 543 U.S. 220 (2005). Thus, although the recommended Guideline range must be taken into account, the Court must follow the "parsimony provision" of 18 U.S.C. § 3553(a), which is the "overarching" command of the statute. *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 570 (2007). That provision provides: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Those purposes, set forth in paragraph 2, are: "the need for the sentence imposed – A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). In making this determination the Court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the Guideline range and any comments thereto, the need to avoid unwarranted sentence disparities, and the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

Moreover, when reaching an appropriate sentence, district courts "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). Rather, the court "must make an individualized assessment based on the facts presented. If [the court] decides that an outside-Guidelines sentence is warranted, [the court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.; see also Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) ("[T]he

sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."). The Supreme Court rejects, however, the notion that "extraordinary circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall*, 128 S. Ct. at 595. Further, the sentencing court may consider whether "the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita*, 127 S. Ct. at 2465. *See also Kimbrough*, 128 S. Ct. at 570 (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Cunnigham v. California*, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines, but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C § 3553(a)).

Significantly, when the Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 128 S. Ct. at 574 (internal quotations omitted); *see also Gall*, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence). Thus, in cases involving application of Guidelines that do not exemplify the Commission's characteristic institutional role of careful study and empirical analysis, it is "not an abuse of discretion for a district court to conclude when

7

sentencing a particular defendant" that application of the Guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes," even in an ordinary case. *Kimbrough*, 128 S. Ct. at 575.

Consistent with this mandate, numerous district courts have imposed sentences far below the Guidelines range for offenses involving the possession and transportation of child pornography. *See, e.g., United States v. Baird*, 580 F.Supp.2d 889 (D. Neb. 2008) (guidelines recommended 46-57 months, and court imposed 24 months where defendant had downloaded images of child pornography from the internet and saved them to a CD, possessed over 800 images and one video of child pornography, had no criminal history, and 2 psychologists said he was a low risk for reoffending); *United States v. Hanson*, 561 F.Supp.2d 1004 (E.D. Wis. 2008) (guidelines recommended 210-262 months [but statutory maximum was 240], and court imposed a 72-month sentence where defendant plead guilty to transporting child pornography over the internet, received a positive psychological evaluation, and had no previous criminal record); *United States v. Ontiveros*, 2008 WL 2937539 (E.D. Wis. 2008) (guidelines recommended 97-120 months, and court imposed 60 months where defendant plead guilty to receipt of child pornography and had no criminal history); *United States v. Grinbergs*, 2008 WL 4191145 (D. Neb. 2008) (guidelines recommended 46-57 months, and court imposed 12 months where defendant plead guilty to possession of images of child pornography); *United States v. Johnson*, 588 F.Supp.2d 997 (S.D. Iowa 2008) (guidelines recommended 121-151 months, and court imposed 84 months where defendant plead guilty to receiving images of child pornography); *United States v. Grober*, 595 F.Supp.2d 382 (D.N.J. 2008) (guidelines recommended 235-293 months, and court imposed 60 months where defendant plead guilty to possession, receipt, and transmission of child pornography and possessed over 1,700 images and 200 videos of child

pornography); *United States v. Beiermann*, 599 F.Supp.2d 1087 (N.D. Iowa 2009) (guidelines recommended 210-262 months, and court imposed 90 months where defendant plead guilty to possession, receiving, transporting, and shipping child pornography, and had a positive psychological report); *United States v. Handy*, 2009 U.S. Dist. LEXIS 6471 (M.D. Fla. 2009) (guidelines recommended 78-97 months for possession of child pornography, and court imposed 36 months).

Moreover, Circuit courts have upheld these sentences despite the significant departures from the guidelines. *See, e.g., United States v. Hensley*, 322 Fed. Appx. 776 (11th Cir. 2009) (upheld 80 month sentence for possession of child pornography); *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007) (upheld an 84 month sentence for possession of child pornography when guidelines range was 151-188 months); *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008) (affirmed a sentence of 66 months when guideline range was 135-168 months, statutory maximum was 120 months, and defendant had received and sent images of child pornography over the internet); *United States v. Smith*, 275 Fed. App'x 184 (4th Cir. 2008) (affirmed a sentence of 24 months when guideline range was 78-97 months where defendant transmitted images of child pornography over the internet, possessed over 1000 images and 262 videos of child pornography, was a low risk of reoffending, and was in treatment).

## V. Application to the Instant Case

As noted in Part III, *supra*, it appears that the Commission has not engaged in its traditional function of conducting careful empirical analysis in arriving at the appropriate recommended range for this type of offense. Indeed, a major flaw with Section 2G2.2—that a typical offender will chart at or above the statutory maximum—is present in this case. The defendant is a first time offender with no criminal history, and his recommended sentence was

enhanced by a number of factors (including the use of a computer, the number of images, children under 12, and distribution for a thing of value) which are present in virtually every case of this kind. *See Hanson*, 561 F. Supp. 2d at 1010. In fact, the recommended sentence actually exceeds the 20 year statutory maximum. This Court does not believe it is appropriate for a fairly typical first time offender who was not involved in the production or widespread distribution of child pornography to receive the maximum sentence of 20 years, when Congress has indicated that this crime can be punished by a range of 5 years to 20 years. Rather, the high end of the statutory range should be reserved for the worst offenders—not those that are fairly typical in this type of case. Thus, the Court concludes, consistent with the Supreme Court's mandate in *Kimbrough*, *Gall*, and *Rita*, that the Guidelines range in this case does not warrant deference because it will result in a punishment that is greater than necessary to achieve the appropriate sentencing goals.

Having so determined, the Court now turns to the sentencing purposes of Section 3553(a)(2), keeping in mind that the Court must impose a sentence that is sufficient, but not greater than necessary, to comply with those purposes. The first is the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The Court concludes that any sentence over the statutory minimum of 60 months would adequately achieve these purposes.

First, the Court notes that this is a serious offense. The distribution of images of child pornography, even when not coupled with the actual production of those images, is a serious offense that warrants serious punishment. Indeed, the Government's goal of preventing the exploitation of children by targeting those who possess and distribute the images is an important one. However, 5 years in a federal prison is a serious punishment that this Court determines fits

10

the crime committed by this defendant. The defendant in this case sent 3 images of child pornography over the internet and expressed a desire to engage in sexual activity with a minor child, which was never followed up upon.[2] The defendant did not harm a child and did not engage in the production or sale of child pornography.

Moreover, the Court notes that, pursuant to Section 3553(a)(6), one factor that the Court must take into account is the need to avoid unwanted sentence disparities. As noted above in Part IV, *supra*, numerous courts have imposed sentences that were substantially less than the recommended Guidelines range for this offense, and in fact were much closer to the statutory minimum. Accordingly, this Court finds that sentencing the defendant closer to the statutory minimum would reduce needless disparity in sentences currently imposed for this offense. Thus, the Court finds that any sentence above the statutory minimum would be a just punishment for the offense and would promote respect for the law.

The second purpose is the need to afford adequate deterrence to criminal conduct. Here, the defendant has accepted responsibility for his actions, apologized, acknowledged that his behavior was wrong, and expressed a desire to seek help to prevent this behavior in the future. The two psychologists that have examined him have concluded that he is progressing very well in therapy and that he presents a very low risk of reoffending. Further, the Court notes again that 5 years in prison is a serious punishment that will adequately deter the defendant and others from committing this offense in the future. Thus, the Court finds that any sentence above the statutory minimum would constitute a strong deterrence to others and adequately meet this purpose.

The third purpose is the need to protect the public from further crimes of the defendant. As stated above, the two psychologists that have examined the defendant have indicated that he presents a very low risk of reoffending. Moreover, the defendant has an adequate support system

---

[2] The "child" was not real, but a fiction created by the FBI agent who was posing as a mother.

awaiting his release. He was employed full time, supporting himself and his wife, for several years before the arrest for this offense. His wife, friends, parents, and adult siblings are all supportive of him. He was previously residing with his wife and two stepchildren; now he is living with his parents. He has no criminal history and the Presentence Investigation Report revealed no previous misconduct, emotional problems, employment problems, or substance abuse. Thus, the Court concludes that any sentence above the statutory minimum will serve the purpose of protecting the public.

The fourth and final purpose is the need to provide the defendant with needed training, medical care, or other correctional treatment. The defendant has been attending court-ordered psychological therapy, and, consistent with the two psychological reports, the Court finds that sex offender treatment is appropriate in this case and will adequately serve this purpose.

## VI. Conclusion

Taking into account all the relevant information, the sentencing purposes, and the Supreme Court's guidance, this Court finds that the circumstances are sufficiently compelling to justify a substantial deviation from the recommended Guidelines range of 210-240 months. This is precisely the type of case where the Guidelines fail to properly take into account the relevant sentencing goals and do not warrant deference.

Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that: The Court finds that the defendant is unable to pay a fine and therefore **no fine is imposed.** The defendant is hereby sentenced to a term of imprisonment of **sixty (60) months.** Upon release from imprisonment, the defendant shall be placed on **Supervised Release for a term of five (5) years.** Within 72 hours of release, the defendant shall report to the probation office in the district where released.

While on supervised release, the defendant shall comply with all standard conditions of supervised release, along with all conditions stated in the forthcoming Judgment.

It is further **ORDERED, ADJUDGED, and DECREED** that since the Court has already conducted a full sentencing hearing and carefully considered the briefs and oral arguments of both parties, it is unnecessary to hear further submissions on the merits from counsel. The defendant will be present for pronouncement of sentencing only on **September 11, 2009 at 10 a.m.** at the James Lawrence King Federal Justice Building, Eleventh Floor, Courtroom 2.

DONE AND ORDERED in chambers at the James Lawrence King Federal Justice Building, Miami, Florida, this 4th day of September, 2009.

JAMES LAWRENCE KING
U.S. DISTRICT JUDGE

**Cc:**
**Counsel for Defendant**
Paul Maury Korchin
Federal Public Defender's Office
150 W Flagler Street
Miami , FL 33130-1556
305-536-6900
Fax: 530-7120
Email: Paul_Korchin@fd.org
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Counsel for USA**
Kelly S. Karase
United States Attorney's Office
99 NE 4 Street
Miami , FL 33132
305-961-9415
Fax: 305-536-4699

Email: kelly.karase@usdoj.gov
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Arimentha R. Walkins
United States Attorney's Office
99 NE 4 Street
Miami , FL 33132
305-961-9091
Fax: 305-536-7599
Email: arimentha.walkins@usdoj.gov
ATTORNEY TO BE NOTICED


Jason Linder
United States Attorney's Office
500 E Broward Boulevard
7th Floor
Fort Lauderdale , FL 33301-3002
954-660-5789
Fax: 954-356-7336
Email: jason.linder@usdoj.gov
ATTORNEY TO BE NOTICED